**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-5682-WJM

ILDA XIOMARA VASQUEZ AGUILAR,

Petitioner,

v.

NATHAN RASPER, in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement, *et al*.

Respondents.

---

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Ilda Xiomara Vasquez Aguilar's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1). Respondents Nathan Rasper, in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office for Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security; U.S. Department of Homeland Security; Todd Blanche, in his official capacity as U.S. Attorney General; Executive Office for Immigration Review; and Juan Baltazar, in his official capacity as Warden of the Aurora ICE Processing Center (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 7). The Court did not order a reply.

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Vasquez Aguilar is a native

and citizen of Honduras. (ECF No. 1 at ¶ 3.) She "entered the United States on November 2, 2016, and was released on parole following a positive credible fear determination." (*Id.*) She has lived in the United States ever since. (*Id.* at ¶ 43.) In July 2020, she filed an I-589 asylum application. (*Id.* at ¶ 3.)

On May 15, 2025, Vasquez Aguilar "was detained without a warrant in Manchester, New Hampshire after she was released from jail on DUI charges." (*Id.* at ¶ 4.) Then, on June 1, 2025, ICE transferred her to its detention facility in Aurora, Colorado. (*Id.*) Vasquez Aguilar is a single mother of two children and, as a result of her detention, her 15-year-old son was placed into foster care in New Hampshire and her 14-year-old daughter was placed with a cousin in North Carolina. (*Id.* at ¶ 3.) Both Vasquez Aguilar and her daughter suffer from health problems. Her daughter has Kawasaki disease and underwent heart surgery. (*Id.* at ¶¶ 3, 44.) Vasquez Aguilar "has high cholesterol and fatty liver disease[,] which require regular medication and monitoring. Her condition has severely worsened . . . [and a] doctor at the detention facility recently told her that her liver disease [cannot] be treated while she is detained." (*Id.* at ¶ 13.) Vasquez Aguilar remains detained in Aurora and Respondents "have offered no lawful basis for her detention, nor [have they] offered a custody redetermination hearing or review of her detention." (*Id.* at ¶ 47.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)

(authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Vasquez Aguilar challenges the legality of her detention under several bases, arguing Respondents violated (1) the Immigration and Nationality Act ("INA") by claiming she is subject to mandatory detention under 8 U.S.C. § 1225 (First Claim), (2) the INA by detaining her indefinitely (Second Claim), and (3) her Fifth Amendment procedural and substantive due process rights (Third Claim). The Court need only reach the merits of the First Claim to resolve this matter. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.").

Although the Court does not reach the merits of the Second Claim, the Court expresses its considerable concern over the extraordinary length of Vasquez Aguilar's detention—she has been detained for nearly a year and a half.

### A. INA Violation

Vasquez Aguilar claims that Respondents' invocation of § 1225 is unlawful because she was "detained in the interior of the United States" and therefore subject to § 1226 instead. (ECF No. 1 at ¶ 49.) Respondents responded without addressing this claim, instead declining to "submit[] a brief in opposition to the Petition detailing the facts

and circumstances of this case." (ECF No. 7 at 1–2.) In any case, the Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) leaves little to debate. Vasquez Aguilar is correct.

In *Santillan Quiroz*, the Tenth Circuit considered "whether § 1225(b)(2)(A) or § 1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at 1235, 1233. Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[1] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at 1237–40. It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239. Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.* By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*

The material facts here are indistinguishable from those summarized in *Santillan Quiroz*. Like the § 2241 petitioner in that case, Vasquez Aguilar had already entered the United States—notably after Respondents had already released her after entry—when she was first detained in November 2016. Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Vasquez Aguilar.

[1] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at 1237 n.6. But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Vasquez Aguilar]." *Id.*

### B. Remedy

The Government declined to substantively address Vasquez Aguilar's claims. (ECF No. 7 at 1–2.) It even concedes that "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, release Petitioner from detention." (*Id.* at 2 (emphasis in original).) Vasquez Aguilar requests immediate release and argues "a bond request is futile . . . ." (ECF No. 1 at ¶ 7.)

The Court agrees with Vasquez Aguilar that a bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Vasquez Aguilar's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and Vasquez Aguilar's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Vasquez Aguilar pursuant to the First Claim of the Petition. The Court does not reach the merits of the Second and Third Claims;

3. **By no later than tomorrow, November 14, 2026,** Respondents shall IMMEDIATELY RELEASE Vasquez Aguilar on her own recognizance, along with all her personal belongings, subject only to the conditions of her pre-existing conditional parole**. No additional conditions of release shall be imposed on Vasquez Aguilar by Respondents**. Respondents shall further facilitate Vasquez Aguilar's transportation from the detention facility by providing all necessary identity and travel documents to return to her primary address,

4. Respondents are ENJOINED from re-arresting or re-detaining Vasquez Aguilar unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that she is a flight risk or danger to the community such that her physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Vasquez Aguilar shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5. During such periods of time as Vasquez Aguilar is in Respondents' custody, they shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Vasquez Aguilar from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Vasquez Aguilar believe she has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, she is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **December 9, 2026**. Respondents shall file a response by no later than **December 30, 2026**, and Vasquez Aguilar shall file a reply by no later than **January 13, 2027**; and

7. Judgment shall enter in Vasquez Aguilar's favor and against Respondents on **November 25, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 13th day of November, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge